IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Robins,                          :
                    Petitioner           :
                                         :
           v.                            :   No. 109 M.D. 2023
                                         :
Secretary Harry,[1] Superintendent       :   Submitted: September 9, 2024
Salamon, Supervisor Tice,                :
Supervisor Durst, Mailroom Worker        :
John Doe #1, Search Staff John Doe       :
#2, Pa. Parole Board, D.A. Krasner,      :
and Phila. D.A's Office,                 :
                    Respondents          :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge

OPINION
BY JUDGE McCULLOUGH                          FILED: August 26, 2025

Before this Court in its original jurisdiction are the amended preliminary objections (Amended POs) filed by the Department of Corrections (DOC or DOC Respondents), the Pennsylvania Parole Board (Board), and the Philadelphia District Attorney's Office (DA or DA Respondents) to the amended petition for review (Amended PFR) filed by Jonathan Robins, *pro se* (Petitioner), in which he challenges the actions of DOC Respondents, the Board, and DA Respondents. Also before the Court is Petitioner's Motion to Amend Complaint a Second Time (Motion to Amend), which he filed on April 21, 2025.

---

[1] The Court has updated the caption in this matter to reflect the substitution of the current Secretary of the Department of Corrections. *See* Pa.R.A.P. 502(c).

# I. BACKGROUND AND PROCEDURAL HISTORY

The relevant facts and procedural history of this case are as follows. Petitioner is an inmate at the State Correctional Institution (SCI) at Rockview who is serving a sentence for unlawful contact with a minor, statutory sexual assault, interference with the custody of a child, and corruption of a minor.[2] (Amended POs, at 2.) While incarcerated, Petitioner was enrolled in a sex offender treatment program (SOTP). (Amended POs, at 2; Amended PFR, ¶ 14.) Pursuant to 42 Pa.C.S. § 9718.1(b), an offender designated as a sexually violent predator must attend and participate in a SOTP to be eligible for parole. During Petitioner's time in the SOTP program, Petitioner maintained his innocence because he believes his actions were not criminal. (Amended PFR, ¶¶ 14-15, 22; Amended POs, at 2-3.) As a result of his failure to admit to the crimes, Petitioner was removed from the program in December of 2020 and did not receive a recommendation for parole from the DOC. (Amended POs, at 2-3; Amended PFR, ¶ 22.) Petitioner was later permitted to reenter the SOTP, but was removed from the program a second and a third time. Each time he was removed from the program for his failure to admit any wrongdoing. (Amended POs, at 3.) Petitioner claims he was told that due to his failure to complete the program, he would not be recommended for parole. (Amended PFR, ¶¶ 21-22.)

On February 24, 2023, Petitioner filed a PFR with this Court naming as Respondents members of the DOC, the Board, and the DA. In May of 2023, DOC Respondents, the Board, and the DA Respondents filed Preliminary Objections (POs) seeking dismissal of the PFR. Subsequently, on August 8, 2023, Petitioner

---

[2] Petitioner claims that the additional charge of involuntary deviate sexual intercourse was incorrectly reflected as "guilty" on his sentencing sheet. *See* Amended PFR ¶¶ 13, 63.

filed his Amended PFR, which sets forth 24 counts.[3] Shortly after Petitioner filed his Amended PFR, the DOC Respondents, the Board, and the DA Respondents each filed Amended POs demurring to Petitioner's Amended PFR. Petitioner seeks monetary and injunctive relief.

## II. ISSUES

The allegations contained in Petitioner's Amended PFR fall into a number of different categories. These categories include: A) Petitioner's statutory claim regarding the DOC's SOTP Program; B) a related Fifth Amendment claim involving self-incrimination; C) constitutional claims relating to the treatment of his mail; D) Petitioner's claim that his right of access to the courts has been infringed; E) additional First Amendment claims; and F) miscellaneous other claims.[4]

---

[3] Count 24 of the Amended PFR was voluntarily dismissed. The majority of the counts name the DOC Respondents. Two of the counts, however, name the Board and one of the counts names the DA Respondents.

[4] On April 21, 2025, more than two years after filing his Original PFR, Petitioner filed with this Court a Motion to Amend Complaint a Second Time (Motion to Amend) to add two additional and unrelated counts against DOC Respondents that are based on events that occurred after Petitioner filed his Original and Amended PFRs. The additional counts involve the alleged assault of Petitioner by another inmate and the taking of Petitioner's legal work by DOC staff while Petitioner was hospitalized following the assault. (Petitioner's Br. in Support of Motion to Amend Complaint, ¶ 4.)

On June 4, 2025, DOC Respondents, Board Respondents, and DA Respondents each filed a Response in Opposition to Petitioner's Motion to Amend (Response in Opposition to Motion to Amend). All Respondents argue that allowing Petitioner to amend his Amended PFR a second time at this juncture would be prejudicial because they have already been required to respond to both the Original and Amended PFRs. (DOC's Response in Opposition to Motion to Amend ¶¶ 15-19; Board's Response in Opposition to Motion to Amend ¶¶ 19-21; DA Respondents' Response in Opposition to Motion to Amend ¶ 15.) Respondents also assert that because the new claims are completely unrelated to Petitioner's other claims, they should be brought in a separate proceeding. *See, e.g.*, DA Respondents' Response in Opposition to Motion to Amend ¶¶ 13-16. On July 1, 2025, Petitioner filed a Reply to District Attorney's Office Opposition to Second Motion to Amend.

# III. ANALYSIS

Each of the Respondents demur[5] to the Amended PFR, asserting that Petitioner has failed to state a claim. When ruling on POs, the court must accept all well-pleaded factual allegations as true, along with any inferences reasonably deduced therefrom. *Neely v. Department of Corrections*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003). The Court is not bound, however, "by legal conclusions,

---

Pennsylvania Rule of Civil Procedure 1033(a) authorizes this Court to grant Petitioner leave to amend the Petition. Pa.R.Civ.P. 1033(a). Rule 1033(a) provides:

> **General Rule.** A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to evidence offered or admitted.

Pa.R.Civ.P. 1033(a).

Granting such leave is within this Court's sound discretion. *Page v. Rogers*, 324 A.3d 661, 685 (Pa. Cmwlth. 2024). In general, leave to amend pleadings should be liberally allowed. *See, e.g.*, *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 84 (Pa. 1994). However "such leave should not be granted if it results in surprise or prejudice to the other party . . . ." *Department of Transportation v. Pennsylvania Industries for the Blind and Handicapped*, 886 A.2d 706, 715 (Pa. Cmwlth. 2005). In discussing the prejudice required to deny amendments, our Supreme Court has stated that "[t]he possible prejudice . . . must stem from the fact that the new allegations are offered late rather than in the original pleading" rather than "by the substance of what is offered." *Bata v. Central-Penn National Bank of Philadelphia*, 293 A.2d 343, 357 (Pa. 1972).

After careful consideration, we deny Petitioner's Motion to Amend. Allowing Petitioner's proposed amendment to add two completely unrelated counts to his Amended PFR, more than two years after the Original PFR was filed, is clearly prejudicial to Respondents who have already responded both to Petitioner's Original PFR and his Amended PFR. Moreover, there is no reason that Petitioner cannot file another Petition for Review with respect to his new claims.

[5] "[T]he question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible." *Stilp v. General Assembly*, 974 A.2d 491, 494 (Pa. 2009).

4

unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). POs should not be sustained unless it "appear[s] with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Neely*, 838 A.2d at 19 n.4.

Rule 1028(a)(4) provides that a party may file POs seeking dismissal of a PFR on the grounds of legal insufficiency of the pleading. With respect to the requirements for the content of a PFR, "Pennsylvania is a fact-pleading state." *Brimmeier v. Pennsylvania Turnpike Commission*, 147 A.3d 954, 967 (Pa. Cmwlth. 2016). The Pennsylvania Supreme Court has explained that although the Rules of Civil Procedure are to be liberally construed, a petition for review "must nonetheless apprise the [respondent] of the claim being asserted and summarize the essential supporting facts." *Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 90 A.3d 682, 694 (Pa. 2014). A party's use of boilerplate allegations defeats the primary purpose of pleading under our rules of procedure, and "a failure to adequately plead a claim 'can and typically does result in the dismissal of the claim and/or cause of action.'" *Brimmeier*, 147 A.3d at 967 (quoting *Allen v. State Civil Service Commission*, 992 A.2d 924, 927 (Pa. Cmwlth. 2010)).

Finally, we note that "the allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys." *Stodghill v. Pennsylvania Department of Corrections,* 150 A.3d 547, 551 (Pa. Cmwlth. 2016), *aff'd*, 177 A.3d 182 (Pa. 2018) (quoting *Danysh v. Department of Corrections*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004), *aff'd*, 881 A.2d 1263 (Pa. 2005)). **"If a fair reading of the complaint shows that the complainant has pleaded facts that may entitle him to relief, the preliminary objections will be overruled."** *Id.* (emphasis in original)

All Respondents have submitted Amended POs averring that Petitioner has failed to state a valid claim pursuant to Rule 1028(a)(4).[6]

### A. *The Proper Interpretation of 42 Pa.C.S. § 9718.1 (Count 6)*

In Count 6, and throughout his Amended PFR, Petitioner argues that because he "participated" in the SOTP, he should be eligible for parole. He asserts that Section 9718.1(b) of the Sentencing Code, 42 Pa.C.S. § 9718.1(b), requires "only attendance and participation in sex program, it does not say one must complete it." *See* Amended PFR, Count 6 & ¶¶ 30, 52. Section 9718.1(b) of the Sentencing Code provides in pertinent part:

> **(a)    General rule.**--A person, including an offender designated as a "sexually violent predator" . . . **shall attend and participate in a [DOC] program of counseling or therapy designed for incarcerated sex offenders** [**SOTP**] if the person is incarcerated in a [s]tate institution for any of the following provisions under [the Crimes Code] (relating to crimes and offenses):
> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses) if the offense involved a minor under 18 years of age.
>
> . . . .
>
> **(b)    Eligibility for parole.**--For an offender required to participate in the program under subsection (a), all of the following apply:
> (1) **The offender shall not be eligible for parole unless the offender has:**
>   (i) served the minimum term of imprisonment;
>   (ii) **participated in the program under subsection (a);** and
>   (iii) agreed to comply with any special conditions of parole imposed for therapy or counseling for sex offenders, including sexually violent predators.

---

[6] Pa.R.Civ.P. 1028(a) states in relevant part: "Preliminary objections may be filed by any party to any pleading and are limited to the following grounds: . . . (4) legal insufficiency of a pleading (demurrer)." Counts 1-10 of the Amended PFR name DOC personnel as respondents.

. . . .

**(c) Department.**--The [DOC] shall develop and provide the program of counseling or therapy for offenders as provided in subsection (a). The [DOC] shall have the sole discretion with respect to counseling or therapy program contents and administration, including the scheduling of an offender's attendance and participation.

**(d) No right of action created.**--Notwithstanding any other provision of law to the contrary, this section should not be construed to confer any legal right upon any individual, including an individual required to participate in the department's programs of counseling or therapy for incarcerated offenders, seeking to:

    (1) participate and attend the program . . . at a time of the individual's own choosing;

    (2) **modify the contents of the program provided in subsection (a);**

    (3) be paroled; or

    (4) **file any other cause of action** in any court regarding the program provided in subsection (a).

42 Pa.C.S. § 9718.1(a)-(d) (emphasis added).

In response, DOC Respondents contend that Section 9718.1(b) of the Sentencing Code requires offenders convicted of certain crimes, such as Petitioner, to participate in and **complete** the program in order to be eligible for parole. (DOC Respondents' Br., at 13-14.) We agree.

In *Stodghill,* 150 A.3d 547, this Court stated that Section 9718.1(c) grants DOC the power to develop and provide the sex offender treatment program to inmates convicted of sexual offenses and that it gives DOC the sole discretion with respect to the contents and administration of those therapy programs' contents. *Id.* at 552. Ultimately, the *Stodghill* Court found that DOC did not err by interpreting Section 9718.1(b) of the Sentencing Code to require Stodghill to complete the

7

program, not merely participate in a portion of it. *Id.* at 554. This Court explained that "[a]llowing any level of attendance, however minimal or unsatisfactory, to meet the requirements of Section 9718.1 [of the Sentencing Code] would entirely frustrate" the rehabilitative legislative purpose behind the statute. *Id.* at 553.

*Stodghill* is directly applicable here. Accepting all of Petitioner's well-pled allegations and inferences reasonably deduced therefrom, it "appear[s] with certainty that the law will not permit recovery . . . ." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). We therefore sustain the DOC Respondents' Amended POs to Count 6 of the Amended PFR to the extent that Petitioner contends that he was not required to complete the SOTP in order to be eligible for parole under Section 9718.1 of the Sentencing Code.

### B. *Petitioner's Fifth Amendment Claim (Count 2)*

Petitioner raises in Count 2 a claim that his Fifth Amendment right against self-incrimination[7] has been violated. He asserts that

> Staff is requiring participants in the program to discuss actions of any uncharged offenses[.] [T]his has nothing to do with any discussions about convicted crimes. **This allows for staff to gather information on uncharged crimes to be able to convict a participant in the future without the legal protections of their *Miranda*[8] Rights.**

(Amended PFR, ¶¶ 28, 48) (emphasis added).

---

[7] The Fifth Amendment provides, in relevant part: "No person shall . . . be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. Petitioner also alleges that his rights under article I, section 9 of the Pennsylvania Constitution have been violated. Our Supreme Court has held that the provision in article I, section 9 of the Pennsylvania Constitution which grants a privilege against self-incrimination "tracks the protection afforded under the Fifth Amendment." *Commonwealth v. Arroyo*, 723 A.2d 162, 166-67 (Pa. 1999).

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

He further avers that SOTP participants are told by prison staff that any **admissions** an inmate makes regarding uncharged crimes **will be reported to authorities**. *Id.* ¶ 28. As relief, Petitioner seeks an injunction against DOC which would allow him to be able to be considered for parole by the Board without being "required to tell any actions of uncharged crimes . . . ." and without the threat of inappropriate reporting in violation of the Fifth Amendment. (Amended PFR, ¶ 58.)

The Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the **answers might incriminate him in future criminal proceedings**." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (emphasis added); *Department of Transportation, Bureau of Driver Licensing v. Vogt*, 535 A.2d 750, 752 (Pa. Cmwlth. 1988); *City of Philadelphia v. Kenny*, 369 A.2d 1343, 1347 (Pa. Cmwlth. 1977). "[T]he availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *Estelle v. Smith*, 451 U.S. 454, 462 (1981) (citation omitted). The Fifth Amendment privilege against self-incrimination can be asserted in any proceeding "in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, **could be used in a subsequent state or federal criminal proceeding**." *United States v. Balsys*, 524 U.S. 666, 672 (1998) (emphasis added).

In *Commonwealth v. Snavely*, 982 A.2d 1244 (Pa. Super. 2009), the Superior Court held that a sex offender treatment program that requires a parolee to admit guilt does not violate the right against self-incrimination **if the treatment program limits the intrusion into the parolee's sexual biography to those incidents underlying their conviction**. Similarly, in *Commonwealth v. Fink*, 990

9

A.2d 751 (Pa. Super. 2010), the Superior Court held that a sex offender treatment polygraph disclosure questionnaire that made specific inquiries about a defendant's past sexual conduct **without regard to whether that conduct has resulted in criminal charges had the potential to reveal essential links in a chain of evidence that could support criminal prosecution on other charges,** and, thus, revocation of the defendant's parole based on a refusal to complete the questionnaire will violate the privilege against self-incrimination.

Consistent with the precedent of the U.S. Supreme Court and the reasoning of our Superior Court,[9] we recognize Petitioner's claim in Count 2 that he cannot be compelled during the SOTP to admit to any uncharged crimes he may have committed because that requirement violates his Fifth Amendment right against self-incrimination.[10] Because this is an issue of first impression in this Court, and

---

[9] While Superior Court decisions are not binding on this Court, they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[10] Although not pled as a separate count, Petitioner also appears to argue in Paragraph 58 of the Amended PFR that he should not be required to change his belief in his innocence (*i.e.*, admit his guilt) in order to become eligible for parole. However, this Court rejected this same argument in *Sontag v. Ward*, 789 A.2d 778 (Pa. Cmwlth. 2001). There, an inmate's request for parole was denied because he had not successfully completed a sex offender treatment program. The inmate did not complete the program because he refused to admit his guilt, which was a requirement of the program. The inmate maintained that by forcing him to admit guilt in order to complete the program and thereby be recommended for parole, the Board violated his right against self-incrimination. We held that a requirement that the inmate admit guilt in order to qualify for a sex-offender program leading to parole, despite pleading no contest, did not violate the Fifth Amendment privilege because "the privilege against self-incrimination does not extend to consequences of a noncriminal nature," such as being considered for parole. *Id.* at 780. *See also Smull v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 614 M.D. 2011, filed November 9, 2012), slip op. at 6 ("The Fifth Amendment protects against compelled self-incrimination in a criminal case.") (emphasis removed) (citation omitted). This Court's unreported memorandum opinions issued after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." (Section 414(a) of the Commonwealth Court's Internal Operating

10

because it is not clear and free from doubt that Petitioner will not prevail on his claim, we overrule the DOC Respondents' Amended POs with respect to Count 2 of the Amended PFR. Pursuant to Pa.R.Civ.P. 1028(d), Respondents shall file a responsive pleading to Count 2 of Petitioner's Amended PFR within 20 days from the date of our attached order.

### C. *Inmate Mail (Counts 14, 15, 17, 20, 23)*

Petitioner avers that his rights have been violated by DOC Respondents' policies regarding inmate mail.[11]

### 1. Refusal of Mail including Legal Mail without Notification (Counts 14, 15, and 20)

Three of Petitioner's allegations relate to claims that mail addressed to him has at times been refused without his being notified of the refusal and afforded an opportunity to appeal the refusal. (*See* Amended PFR, Count 14, ¶ 66; Count 15, ¶ 67; and Count 20, ¶ 77).

Count 15 alleges a violation of Petitioner's First Amendment right to receive mail. In this count, Petitioner asserts that letters sent to him were withheld from him when they arrived with confiscated items even though DOC policy states that the letters are to be given to him, that mail has been sent to a Bellefonte address without notifying him, and that senders have been instructed to send mail to Florida. (Amended PFR, ¶ 67.)

---

Procedures, 210 Pa. Code § 69.414(a). This Court cites *Smull* for its persuasive value); *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998). Applying the above precedent to these circumstances, we must conclude that they do not implicate the Fifth Amendment right against self-incrimination.

[11] Petitioner appears to have complaints about the terms and implementation of a settlement entered into by DOC relating to inmate mail in 2019. *See Pennsylvania Institutional Law Project v. Wetzel* (M.D. Pa., Civil No. 1:18-CV-2100).

11

Count 14 of the Amended PFR avers that Petitioner's procedural due process rights have been violated because mail arrives at the prison for him and that mail is refused by prison staff without notification to Petitioner. Because he lacks notification, Petitioner contends he is deprived of his right to challenge the mail's refusal. (Amended PFR, ¶ 66.)

Count 20 of the Amended PFR alleges that the prison violates Petitioner's procedural due process rights when mail comes for him to the prison without a control number ("unacceptable correspondence") and that he should be allowed to appeal the refusal of his mail. Petitioner contends that by the time he receives notice of correspondence without a control number, it has a sticker on it saying that the mail has already been returned to the sender, giving Petitioner no opportunity to appeal the refusal of his mail.

DOC Respondents argue that Petitioner's allegations that his mail was withheld without notice fail to state a claim for which he is entitled to relief because the allegations do not provide a sufficient factual basis to consider the claim. (DOC Respondents' Br. at 18-19.)

DOC Respondents acknowledge that the Third Circuit Court of Appeals has held that "prisons must notify inmates when their incoming mail is rejected." *Vogt v. Wetzel*, 8 F.4th 182, 184 (3d Cir. 2021). (DOC Respondents' Br. at 18.) They also acknowledge that DOC policy, which outlines the procedures to be used when unacceptable correspondence is received at the facility, includes provisions requiring the prison to provide the inmate with notice and the opportunity to file a grievance. *Id.*

In *Romig v. Wetzel*, 309 A.3d 1108, 1113 (Pa. Cmwlth. 2024), this Court stated that the First Amendment to the United States Constitution protects an inmate's general right to communicate by mail. *See also Hill v. Pennsylvania Department of Corrections*, 271 A.3d 569 (Pa. Cmwlth. 2022) (holding that

interference with an inmate's mail can rise to the level of a constitutional violation); *Rivera v. Silbaugh*, 240 A.3d 229, 238 (Pa. Cmwlth. 2020) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). To prove a claim of interference with this right, the plaintiff must show that the interference was done according to a "pattern and practice," *Romig*, 309 A.3d at 1113-14, or has resulted in "an actual injury." *Id.* at 1114. A single, isolated interference with an inmate's personal, non-legal mail is not sufficient to constitute a First Amendment violation. *Hill*, 271 A.3d at 577-78. In *Hill,* an inmate's wife complained that the inmate had failed to receive approximately 38 pieces of mail. The Court found that her petition alleging this degree of interference contained sufficient facts alleging a "pattern and practice" of mail interference sufficient to assert a constitutional violation of her First Amendment right to correspond by mail. *Hill*, 271 A.3d at 579.

Prisoners also have a Fourteenth Amendment right in receiving their mail. To maintain a due process challenge under the Fourteenth Amendment, the inmate initially must establish that he or she has been deprived of a protected liberty or property interest. *Romig*, 309 A.3d at 1114. If, and only if, the prisoner establishes the deprivation of a legally cognizable liberty interest will the Court consider what type of procedural mechanism is required to fulfill due process. *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017). A deprivation of a legally cognizable liberty interest "occurs when the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Feliciano v. Department of Corrections*, 250 A.3d 1269, 1275 (Pa. Cmwlth. 2021), *aff'd*, 283 A.3d 196 (Pa. 2022).

In addition to requiring notice of the rejection of an inmate's incoming mail, *Vogt* also held that a prison's mail rejection policy can implicate an inmate's liberty interest. *Romig*, 309 A.3d at 1115. According to *Romig, Vogt* established that prisons must provide minimal procedural safeguards when they censor or

withhold delivery of a particular letter. *Id.* In *Romig*, the Court determined that when the DOC rejected an inmate's letter without providing him with notice of its rejection, the DOC violated the inmate's right to due process. *Id.*

Based on the information contained in Counts 14, 15, and 20 of the Amended PFR, which describe a number of scenarios in which Petitioner has had his mail refused without notification, we cannot say that "it appears with certainty that the law will not permit recovery." *Neely*, 838 A.2d at 16. Therefore, we overrule the Amended POs with respect to Counts 14, 15, and 20 of the Amended PFR. Respondents shall file a responsive pleading to Counts 14, 15 and 20 of Petitioner's Amended PFR within 20 days of the date of our attached order.

### 2. Constitutionality of DOC's Mail Policy (Count 17)

In Count 17, Petitioner alleges a violation of his First Amendment right to receive confidential private information by mail. He asserts that DOC Respondents' mail policy does not allow for confidential and private information to be safeguarded from third parties because the definition of "Privileged Correspondence" is too narrow. He would like for information such as "tax and bank information and other information such as medical information" which is not addressed by the DOC's mail policy to be considered "privileged."[12] (Amended PFR, ¶¶ 73, 74.) In this count, Petitioner states that he is not challenging the implementation of DOC Respondents' mail policy, but rather the constitutionality of the DOC mail policy. (Amended PFR, ¶¶ 73, 74.) Here, Petitioner has not pled sufficient facts to demonstrate he may be entitled to relief. Accordingly, viewing the averments of the Amended PFR in the light most favorable to Petitioner and

---

[12] Under the policy, incoming privileged mail can be sent directly to the SCI where the inmate is located. However, all non-privileged mail is to be mailed to SmartCom's Post Office Box in St. Petersburg, Florida. SmartCom's staff opens and scans all non-privileged inmate mail, and then electronically transmits the scanned copies to the appropriate SCI staff.

14

giving him the benefit of any doubt, we must conclude that Count 17 of the Amended PFR is deficient and fails to state a claim upon which relief can be granted. We therefore sustain the DOC Respondents' Amended POs directed to this count of the Amended PFR.

### 3. Reading Petitioner's Privileged Mail During a Random Cell Search (Count 23)

Count 23 of the Amended PFR alleges that a prison employee violated Petitioner's First Amendment rights when he read Petitioner's privileged correspondence during a random cell search. (Amended PFR, ¶ 83.) With respect to this count, we again find that Petitioner has failed to state a valid claim for relief. This Court has held that "a single, inadvertent opening of properly marked legal mail outside an inmate's presence may not infringe a prisoner's right to free speech or his right to court access absent a showing of actual injury." *Jones v. Doe*, 126 A.3d 406, 409 (Pa. Cmwlth. 2015) (citing *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995), *overruled on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996)).

Here, Petitioner references a single incident and makes no showing of actual injury or that it was not inadvertent. We must therefore find that the actions alleged do not constitute an infringement of Petitioner's First Amendment rights, and, accordingly, we sustain DOC Respondents' Amended POs with respect to this count of the Amended PFR.

### D. *Access to the Courts (Counts 3, 16, 18 & 19)*

#### 1. Right to Appeal (Count 3)

In Count 3 of the Amended PFR, Petitioner asserts that the DOC Respondents do not allow participants in the SOTP to both appeal their convictions and also complete the SOTP so they may become eligible to be considered for parole by the Board. Petitioner alleges this violates article V, section 9, and article I,

section 20 of the Pennsylvania Constitution, as well as 18 U.S.C. § 3742. (Amended PFR, ¶ 49.) Article V, section 9 of the Pennsylvania Constitution grants the right of appeal, and article I, section 20 sets forth the right to petition the government and is inapplicable here.[13] DOC Respondents assert that article V, section 9 of the Pennsylvania Constitution is inapplicable and fails to form a basis for relief against DOC Respondents. (DOC's Amended POs, at 12).[14]

Pennsylvania's constitution establishes the right to appeal to an appellate court. Article V, section 9 of the Pennsylvania Constitution provides:

> There shall be a right of appeal in all cases to a court of record from a court not of record**; there shall also be a right of appeal from a court of record** or from an administrative agency to a court of record or **to an appellate court to be provided by law;** and there shall be such other rights of appeal as may be provided by law.

Pa. Const. art. V, § 9. (emphasis added). *See also Commonwealth v. Pfaff*, 384 A.2d 1179, 1182 (Pa. 1978) (stating "[o]ne convicted of a crime [] has a right to appeal . . ."); *Commonwealth v. Maloy*, 264 A.2d 697, 698 (Pa. 1970) (holding that "[i]t is now settled beyond argument that every person convicted of a crime has the right to have his conviction and sentence reviewed through appeal . . .").

Our Supreme Court has construed this constitutional provision to mandate a right to appeal. *See, e.g.*, *Bronson v. Board of Probation and Parole,* 421 A.2d 1021, 1024 (Pa. 1980), *cert. denied*, 450 U.S. 1050 (1981); *Commonwealth v. Wilkerson*, 416 A.2d 477, 479 (Pa. 1980). In *Commonwealth v. Lantzy*, 736 A.2d

---

[13] We note that 18 U.S.C.S. § 3742 is a federal law that governs the review of sentences resulting from federal criminal prosecutions and it does not apply to convictions for violation of state crimes. Therefore, it is inapplicable here.

[14] However, the DOC's Amended POs do not discuss the right to appeal, but rather cite a case discussing whether due process is required when an inmate is labeled a sex offender.

564 (Pa. 1999), the Supreme Court held that "since [a]rticle V, [s]ection 9 of the Pennsylvania Constitution guarantees a direct appeal as of right, . . . [counsel's] failure to file or perfect [] an appeal results in a denial so fundamental as to constitute prejudice *per se.*" 736 A.2d at 571.

Because we are ruling on POs, we must accept all well-pleaded factual allegations in Petitioner's Amended PFR as true. *Neely*, 838 A.2d at 19 n.4. Here, under "a fair reading" of Count 3 of the Amended PFR, Petitioner has pleaded facts that "may entitle him to relief," *see Stodghill*, 150 A.3d at 551, especially in light of the fact that the right to appeal is a fundamental right in this state which is enshrined in our Constitution. Thus, we cannot find that "it appear[s] with certainty that the law will not permit recovery," and we therefore overrule DOC's Amended POs with respect to this count of Petitioner's Amended PFR. DOC Respondents shall file a responsive pleading to Count 3 of Petitioner's Amended PFR within 20 days of the date of our attached order.

### 2. Right to Litigate *Pro Se* (Count 19)

In Count 19 of the Amended PFR, Petitioner alleges that he has a right to proceed *pro se* in litigation under the Sixth and Fourteenth Amendments and that this right has been violated by the DOC Respondents' mail policy which does not address the needs of *pro se* inmates. (Amended PFR, ¶ 76.) This Court explained the DOC's mail policy in *Wishnefsky v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 191 M.D. 2021, filed May 19, 2023). There, the Court stated:

> The Policy[] provides that incoming *privileged* mail should still be addressed and sent directly to each SCI, wherever the inmate is located. However, all *non-privileged* mail should be mailed to SmartCom's Post Office Box in St. Petersburg, Florida. SmartCom's staff opens and scans all non-privileged inmate mail, and then electronically transmits the scanned copies to the appropriate SCI staff. Non-privileged mail under the

17

> Policy includes legal mail from attorneys representing individuals and government agencies engaged in litigation against inmates, [  ]; in other words, legal mail other than that sent by attorneys representing the inmates.

*Id.*, slip op. at 2 (emphasis in original).

Petitioner alleges that if he were a licensed lawyer who was not incarcerated, information mailed to him from opposing counsels would be "Privileged Correspondence" and would not be viewed by third parties. (Amended PFR, ¶ 76.) DOC Respondents assert that Petitioner's argument is misguided because correspondence between DOC Respondents' counsel and an inmate or his counsel is not subject to attorney-client privilege. (DOC's Amended POs, at 17.)

In this instance, we agree with the reasoning of DOC Respondents. Petitioner appears to misapprehend the nature of the attorney-client privilege. Mail sent to an inmate by his own attorney is subject to the attorney-client privilege and therefore is not viewed by third parties before being given to inmates such as Petitioner. However, mail sent between opposing counsel in a legal dispute is not subject to the attorney-client privilege, regardless of whether one party is proceeding *pro se.* However, because a *pro se* litigant is the one who needs to receive legal notices and pleadings from opposing counsel, or otherwise potentially suffer loss of important legal rights, it does not appear with certainty that the law will not permit recovery. We therefore overrule DOC Respondents' Amended POs to the allegations of Count 19 of the Amended PFR. DOC Respondents shall file a responsive pleading to Count 19 of Petitioner's Amended PFR within 20 days of the date of our attached order.

### 3. Right of Access to the Courts (Counts 16 and 18)

Count 16 of the Amended PFR alleges a violation of Petitioner's right of access to the courts under the First, Sixth, and Fourteenth Amendments to the

United States Constitution and under article I, section 11 and section 20 of the Pennsylvania Constitution. Petitioner avers that, among other things, a member of the mailroom staff had been refusing Petitioner's legal mail from the Philadelphia County Court of Common Pleas[15] for over six months without notifying Petitioner. This member of the mailroom staff allegedly also instructed the court to send Petitioner's legal mail to Florida (SmartCom) without Petitioner's permission. Petitioner is a *pro se* litigant in a Philadelphia County Court of Common Pleas case and Petitioner avers these actions have caused him to miss three video conferences and have violated the privacy of his legal mail. (Amended PFR, ¶ 70.) He also explains that he was notified by an attorney that legal mail was sent to him which he did not receive. (Amended PFR, ¶ 34.) He states that in August of 2019, mail addressed to him from the Philadelphia DA was sent to him for which he did not receive a refusal notice and that in December 2021, he discovered that the Philadelphia County Court of Common Pleas had been unable to contact him. (Amended PFR, ¶ 35, 37.) He also alleges that he won a judgment in the Philadelphia County Court of Common Pleas and has been unable to collect the judgment due to actions of the mailroom. (Amended PFR, ¶ 38.)

Count 18 of the Amended PFR alleges a violation of Petitioner's right of access to the courts under the same constitutional provisions. Petitioner claims that the DOC has an obligation to make attempts to contact the sender of privileged correspondence when no control number is attached to the privileged mail. (Amended PFR, ¶¶ 39.) In Count 18, Petitioner avers that DOC Respondents have no alternate procedure that they follow if a court or government agency refuses to

---

[15] In his PFR, Petitioner refers to litigating *pro se* at the "Phila County Court." (Amended PFR, ¶¶ 37, 38, 70.) We assume that Petitioner is referring to the Philadelphia County Court of Common Pleas, but we note that the constitutional right of access to the courts includes access to courts generally.

obtain a control number which is required for inmate mail. The count contends that a court or an agency has no obligation to follow the DOC's mailing policy, but that inmates still have a constitutional right to receive confidential information from a court without it being viewed by a third party even if a court refuses to obtain a control number from DOC. (Amended PFR, ¶ 75.) DOC Respondents assert that Petitioner has not stated a claim for denial of the right of access to the courts because he has not shown actual injury. (DOC's Amended POs, at 15-16.)

This Court has found that inmates have a "fundamental constitutional right of access to the courts." *Bussinger v. Department of Corrections*, 29 A.3d 79, 84 (Pa. Cmwlth 2011) (quoting *Bronson v. Horn*, 830 A.2d 1092, 1095-96 (Pa. Cmwlth. 2003), *aff'd*, 848 A.2d 917 (Pa. 2004), *cert. denied*, 543 U.S. 944 (2004)). While a prisoner's right to access the courts is derived from both the Pennsylvania Constitution[16] and the United States Constitution (First and Fourteenth Amendments), the analysis under both federal and state law is the same. As noted by DOC Respondents, in order to state a claim, a plaintiff must make a showing of actual injury. *See Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997).

Even when an inmate is able to show actual injury, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Bronson*, 830 A.2d at 1095 (citations omitted). In order to determine the reasonableness of the challenged policy, a court must apply the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Those factors are:

> (1) [w]hether there is a "valid, rational connection" between the prison regulation and the legitimate

---

[16] Pa. Const. art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, good, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.").

20

governmental interest asserted to justify it; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the asserted constitutional right will have on guards, inmates, and prison resources; and (4) whether there are "ready alternatives" to the rule that would accommodate prisoners' rights at *de minimus* cost to penological interests.

*Bussinger*, 29 A.3d at 84. DOC Respondents make no arguments relating to the reasonableness of the regulations governing inmate legal mail about which Petitioner complains.

We find that taking Petitioner's allegations as true, Petitioner has demonstrated that the alleged shortcomings of the prison's mail system "hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. In Count 16, Petitioner avers that a failure to receive mail from the Philadelphia County Court of Common Pleas for over six months has caused him to miss three video conferences in a case in which he was a litigant. Petitioner also alleges that he won a judgment in Philadelphia County and has been unable to make progress in collecting his judgment because delays in his receiving mail from the court has caused his hearing to be postponed for over a year and a half. (Amended PFR, ¶¶ 37-38.) In light of these facts, we cannot conclude that it "appear[s] with certainty that the law will not permit recovery . . . ." *Neely*, 838 A.2d at 19 n.4. "Because any doubt should be resolved by a refusal to sustain [the POs]," *id.*, we overrule DOC Respondents' Amended POs with regard to Counts 16 and 18. Respondents shall file a responsive pleading to Counts 16 and 18 of Petitioner's Amended PFR within 20 days of the date of our attached order.

21

## E. *Additional First Amendment Claims*

### 1. Petitioner's Right to His Beliefs (Counts 1 and 5)

Petitioner avers in Count 1 of the Amended PFR that he has sustained a violation of his First Amendment right to "believe in his own truth" while participating in the SOTP, because the program requires Petitioner to admit guilt to the crimes for which he has been convicted, while Petitioner believes he is innocent of any wrongdoing with respect to his "marriage" to a minor. (Amended PFR, ¶ 46.) DOC Respondents argue that this claim should fail because states "have a vital interest in rehabilitating convicted sex offenders and acceptance of responsibility for past offenses is a critical first step in a prison's rehabilitation program for such offenders." (DOC's Amended POs, ¶ 33.)

In Count 5 of his Amended PFR, Petitioner alleges that DOC Respondents have infringed on his right to religious freedom under the First Amendment to the U.S. Constitution, and article I, section 3 of the Pennsylvania Constitution.[17] In addition, he alleges an infringement of his right to practice religion under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, which prohibits the federal government from substantially burdening a person's religious exercise. He also avers that his rights pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C § 2000cc-1, have been infringed.

---

[17] Article I, section 3 of the Pennsylvania Constitution provides:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

Pa. Const. art. I, § 3.

22

According to Petitioner, the violation arises out of DOC's requirement he must lie about, disavow, and demonize his "marriage." (Amended PFR, ¶ 51.)

In evaluating these claims, we note that an inmate's constitutional rights are "necessarily limited." *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999). It is well-settled law that an inmate "retains those First Amendment rights that are not inconsistent with his status as [a] prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner*, 482 U.S. at 89 ("[W]hen a regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). In *Newman v. Beard,* 617 F.3d 775 (3d Cir. 2010), a convicted sex offender sued Parole Board officials who denied him parole because he refused to participate in a SOTP which required that all participants admit their guilt. Newman stated that he believed he was innocent of the crimes of which he was convicted. The Third Circuit Court of Appeals dismissed the inmate's First Amendment claim on the grounds that "the prison system may structure its treatment programs and pursue legitimate penological objectives from that standpoint." *Newman*, 617 F.3d *Id.* at 781.

With respect to Count 1, viewing the averments in the Amended PFR in the light most favorable to Petitioner, it appears with certainty that the law will not permit recovery. As such, we sustain DOC Respondents' Amended PO to Count 1 of the Amended PFR.

In considering Count 5, we turn to consideration of the RLUIPA.[18] The relevant section of the RLUIPA states:

(a) General rule

---

[18] RLUIPA was passed to provide greater protection for religious liberty than is provided by the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 356-58 (2015).

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person--

(1) Is in furtherance of a compelling governmental interest; and

(2) Is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. The section only applies when "the substantial burden is imposed in a program or activity that receives Federal financial assistance" or "the burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." *Id.* Here, Petitioner has not alleged that DOC accepts federal funds.

Even assuming that RLUIPA applied, Petitioner's claim fails because the statute places the burden on Petitioner to demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise. A government action or regulation creates a substantial burden on religious exercise if it truly pressures the offender to significantly modify his religious behavior and greatly violates his religious beliefs. *Adkins v. Kaspar*, 393 F.3d 559, 569-70 n.37 (5th Cir. 2004), *cert. denied*, 545 U.S. 1104 (2005).[19]

---

[19] [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs; or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

In the present case, Petitioner has not averred any facts demonstrating that the government practice he complains of imposes a substantial burden on his religious exercise. Rather, Petitioner has provided only the bare allegation that his right to practice his religion has been violated.[20] Because Petitioner fails to develop the issue, we conclude that Petitioner has failed to state a claim upon which relief can be granted. We therefore sustain the Amended POs as they relate to Petitioner's freedom of religion claim under the First Amendment of the U.S. Constitution, the Pennsylvania Constitution, and the RLUIPA.

## 2. Right to Marital Privacy (Count 4)

In Count 4, Petitioner alleges that DOC staff have violated his rights under article I, section 1 of the Pennsylvania Constitution and the First Amendment to the U.S. Constitution. He claims they have done this by requiring Petitioner to discuss his private marital relationship with DOC staff and the SOTP group. For the reasons discussed above relating to Count 5 of the Amended PFR, we again find that Petitioner has failed to state a claim upon which relief can be granted and we grant

---

*Adkins*, 393 F.3d at 570.

[20] Moreover, in the event that a plaintiff were able to meet this initial burden, the government has the opportunity to prove that its practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc-2. Like Count 1, Count 5 appears to relate to the requirement of Petitioner's SOTP that requires him to admit that he is guilty of the crimes for which he was convicted only for purposes of his treatment. Like the previous Count, we recognize that "the prison system may structure its treatment programs and pursue legitimate penological objectives from that standpoint." *Newman*, 617 F.3d at 781. We also note, however, that requiring a Petitioner to admit to alleged crimes for which he has not been charged, and divulging this information for purposes of seeking future indictments against him is unconstitutional for the reasons aforestated. Count 5 also has in common with Count 1 that it appears that the SOTP requirement at issue is an essential part of treatment for sex offenders that advances this interest in the least restrictive manner.

DOC Respondents' Amended POs and dismiss Count 4 of Petitioner's Amended PFR.

### F. *Other Claims*

#### 1. Eighth Amendment Claim (Count 9)

Petitioner alleges that he has been subjected to cruel and unusual punishment in violation of his Eighth Amendment[21] rights because he was required to disavow and demonize his marriage, and to tolerate staff's slanderous and repugnant statements about his marriage while he participated in the SOTP. (Amended PFR, ¶ 55.) DOC Respondents, in response, assert that this claim fails because allegations of verbal harassment alone do not state an Eighth Amendment violation. We also note that while Petitioner claims to be practicing his religion by being married to a minor, this is an unlawful act in Pennsylvania as well as other, if not all, states in America. We therefore sustain the DOC Respondents' Amended POs to this Count of the PFR.

#### 2. Discrimination Against Participants in SOTPs (Count 8)

In this Count, Petitioner alleges an equal protection claim under the Fourteenth Amendment, article I, section 26 of the Pennsylvania Constitution,[22] and the Equal Protection Act, 42 U.S.C. §§ 1981,2000a. (Amended PFR, ¶ 54.) Petitioner asserts that only inmates in a SOTP, as opposed to inmates enrolled in

---

[21] The Eighth Amendment to the U.S. Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[22] Article I, section 26 of the Pennsylvania Constitution states that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26. Here, Petitioner has not alleged that he was denied or discriminated against in the exercise of any civil right.

other programs, are required to believe what staff tells them, are required to make self-incriminating statements of uncharged crimes,[23] are not allowed to appeal convictions, must discuss their private marital relationships, and are not allowed to practice their religion in order to complete the program and be eligible for parole. *Id.* DOC Respondents state that there has been no equal protection violation because sex offenders are not similarly situated to non-sex offenders and therefore a rational basis exists for the DOC's different treatment of different categories of offenders. (DOC's Amended POs, at 12.)

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The general rule is that legislation is presumed valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson*, 450 U.S. 221 (1981). In order to make out a claim of discrimination under the Fourteenth Amendment, a plaintiff must allege that he is a member of a protected class. Being designated a sex offender does not qualify as membership in a "protected class" for equal protection purposes. That designation is reserved for categories such as race, religion, or gender. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 330-41 (1985) (discussing protected classes). The sex offender category does not qualify as a protected class

---

[23] As stated in Section III.B of this Opinion, *supra*, there exists persuasive authority to support Petitioner's claim that he cannot be compelled during the SOTP to admit to any uncharged crimes he may have committed because that requirement may violate his Fifth Amendment right against self-incrimination. *See* pp. 8-11, *supra*.

Finally, Petitioner alleges a violation of the Equal Protection Act, 42 U.S.C. §§ 1981, 2000a, which does not apply in this situation.[24]  We note that Petitioner cannot state a claim under 42 U.S.C. § 1981.[25]  While Section 1981 guarantees extensive rights, it does not create a private right of action against state actors.  Rather, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."  *McGovern v. City of Philadelphia*, 554 F.3d 114, 116-17 (3d Cir. 2009).

We find that a rational basis exists for the DOC's differential treatment of different categories of offenders.  Because we find no equal protection violation under this Count of the Amended PFR, we sustain the DOC Respondents' Amended POs with respect to Count 8 of the Amended PFR.

### 3. Equal Protection Claims Against the Board Relating to Parole (Counts 11 and 12)

In Counts 11 and 12 of the Amended PFR, Petitioner alleges that the Board has violated his equal protection rights under the Fourteenth Amendment.  In Count 11, Petitioner avers that a previous DOC inmate named Newman was given a parole hearing without attending a sex offender program after being convicted of

---

[24] 42 U.S.C. § 2000a is a statute that prohibits discrimination or segregation in places of public accommodation.  It is not relevant to this count of Petitioner's Amended PFR.

[25] Section 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

a sex offense. He avers that he and Newman are similarly situated, but that he has not been granted a parole hearing. (Amended PFR, ¶ 59.) Petitioner alleges in Count 12 that he has satisfied the requirements of Section 9718.1 of the Sentencing Code and therefore has a right to be seen by the Board. *Id.* at 60. Petitioner asks this Court to grant him nominal damages and order the Board to consider him for parole without requiring him to complete the SOTP. *Id.* at 61.

The Board's Amended POs state that Petitioner has failed to set forth sufficient facts in his Amended PFR to maintain a valid cause of action against the Board. (Bd.'s Amended POs, ¶ 31.) With respect to Count 12, as a designated sex offender, Petitioner must comply with the requirements of 42 Pa.C.S. § 9718.1 before he is eligible for parole. *Id.* ¶ 22. However, the Board states that Petitioner admits he has been removed from the SOTP prior to completion at least three times because he continues to deny that he is guilty of any criminal conduct. Therefore, the Board argues, Petitioner has failed to plead sufficient facts to support his claim that he has satisfied the requirements of Section 9718.1 and therefore he has no right to appear before the Board. *Id.* ¶¶ 20, 22, 26, & 27. The Board also contends that Petitioner fails to state a claim that his due process rights were violated because he has not shown that the state has interfered with a protected liberty or property interest. Finally, the Board asserts that prisoners have no constitutionally-based right to parole under the U.S. Constitution. *Id.* ¶¶ 29-30.

With respect to Petitioner's allegation in Count 11 that his due process rights were violated because a previous DOC convicted sex offender was given a parole hearing without participating in an SOTP, the Board contends that Petitioner has not suffered a due process violation because he has no liberty or property interest in being granted parole. *Id.* ¶¶ 29, 30.

We agree with the Board and sustain the Board's Amended POs to Counts 11 and 12 of the Amended PFR. With respect to Count 12, Petitioner has

not pled all essential facts necessary to support his allegation that he has satisfied the requirements of Section 9718.1. Therefore, dismissal is proper. *See* Pa.R.Civ.P. 1019(a); *Stilp v. Commonwealth*, 910 A.2d 775, 787 (Pa. Cmwlth. 2006). With respect to the equal protection allegation in Count 11, we note that an individual is not entitled to due process unless the state interferes with a protected liberty or property interest. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989). Prisoners have no constitutionally-based right to parole under the U.S. Constitution. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). State law may create liberty interests even in the prison setting. *Thompson*, 490 U.S. at 461. However, in this case, Petitioner points to no state law that does so for him with respect to the issue of parole. Moreover, this Court has previously stated that "in Pennsylvania, a prisoner has no protected liberty interest in being released from confinement prior to the expiration of his or her maximum term." *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 770 (Pa. Cmwlth. 1997). We therefore sustain the Board's Amended PO with respect to Petitioner's equal protection claims.

### 4. Age Discrimination Claim (Count 10)

Count 10 of the Amended PFR alleges that Petitioner's equal protection rights under the Fourteenth Amendment have been violated because staff has discriminated against him because of the age difference between him and his wife. (Petitioner's Amended PFR, ¶¶ 56-8.) DOC Respondents contend that Petitioner's unsubstantiated allegations fail to present a valid claim for relief. They assert that DOC is mandated to provide the SOTP to Petitioner and that, contrary to Petitioner's allegations, "staff's personal opinions" regarding his marriage had no bearing on this requirement. (DOC's Amended POs, at 12.)

With respect to this Count, we find that Petitioner has failed to state a claim upon which relief can be granted. Petitioner here has neither provided

30

sufficient information to apprise the DOC Respondents of the claim being asserted nor summarized the essential supporting facts relevant to this claim. We note that "[l]egal conclusions and general allegations of wrongdoing, without the requisite factual averments or support, fail to meet the pleading standard." *McCulligan v. Pennsylvania State Police*, 123 A.3d 1136, 1141 (Pa. Cmwlth. 2015), *aff'd*, 135 A.3d 580 (Pa. 2016). Because we find that Petitioner has failed to state a claim upon which relief can be granted, we sustain DOC's Amended POs and dismiss Count 10 of Petitioner's Amended PFR.

5. General Deprivation of Substantive Due Process Rights (Count 7)

Count 7 of the Amended PFR alleges a violation of Petitioner's substantive due process rights under the Fourteenth Amendment. He alleges that the requirements of the SOTP have deprived him of each of the following: 1) his right to his own belief of what is the truth; 2) his right against self-incrimination; 3) his right to appeal; 4) his right to marital privacy; 5) his right to his religious practice; and 6) his right to be seen by the Parole Board. (Amended PFR, ¶ 53.)

The doctrine of substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Sutton v. Bickell*, 220 A.3d 1027, 1033 (Pa. 2019) (quoting *Commonwealth v. Bullock*, 913 A.2d 207, 214 (Pa. 2006)). However, prison administrators are "afforded wide-ranging deference in adopting and carrying out policies that in their reasonable judgment are necessary to preserve order, discipline and security." *Id.* In *Turner*, the United States Supreme Court concluded that prison rules which limit inmates' constitutional rights are valid so long as they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

Each of the allegations of this Count of the Amended PFR relate to complaints that Petitioner has concerning the DOC's SOTP program and each reprises allegations made by Petitioner in other counts of the Amended PFR.

Because we have previously found that the requirements of the SOTP of which Petitioner claims in this Count are reasonably related to legitimate penological interests, we must find that the allegations of this Count are insufficient to support a claim based on substantive due process. We therefore sustain the DOC's Amended POs related to this Count.

### 6. Due Process Claim Against DA Respondents (Count 13)

Count 13 of the Amended PFR alleges that the DA Respondents violated Petitioner's substantive due process rights under the Fourteenth Amendment when they created false information in Petitioner's record indicating that he was found guilty of an offense for which he was not convicted. According to Petitioner, after a jury trial, he was found guilty of four Counts of sexually related offenses, but was found not guilty of an additional charge, involuntary deviant sexual intercourse by forcible compulsion. He now avers that this last charge was "falsely listed as guilty on [his] sentencing sheet." This factual error, Petitioner claims, has affected his participation in the SOTP, has adversely affected his ability to be considered for parole, and has resulted in his having received an incorrect sentence. (Amended PFR, ¶ 63.) Petitioner seeks an injunction against the DA Respondents requiring them to correct the alleged error.[26]

The sentencing order that Petitioner complains of is a record of the Philadelphia County Court of Common Pleas, not a record of DA Respondents. DA Respondents do not have the ability to change the record. Under Pennsylvania law (42 Pa.C.S. § 9718.1(a)(1)), state inmates who have committed any sexual offense against a minor must attend a SOTP. DA Respondents' Br. at pp. 50-51. For the

---

[26] The DA Respondents contend that the facts as related by Petitioner in his Amended PFR are not accurate. (DA Respondents' Br. at 5.) However, for purposes of consideration of the Amended POs filed by the DA Respondents, we accept Petitioner's factual allegations as true.

above reasons, we sustain the Amended PO of the DA Respondents with respect to Count 13.

      7.  <u>Right to Proper Designation of Ethnicity (Counts 21 and 22)</u>

In Counts 21 and 22, Petitioner challenges his designation as "Black" in prison records and avers that he has a constitutional right to have his proper ethnicity, which is "mixed," used. Petitioner claims that this mis-designation of his ethnicity is a violation of his Fourteenth Amendment procedural due process rights under article I and section I of the Pennsylvania Constitution Article I, § 1.[27] With respect to these claims, DOC Respondents contend that Petitioner has failed to allege the violation of a protected liberty interest for which he would be entitled to relief. (DOC's Amended POs, at 18.) As this Court has previously stated, "before one is entitled to procedural due process, one must possess an identifiable property right or liberty interest." *Keeley v. State Real Estate Commission*, 501 A.2d 1154, 1157 (Pa. Cmwlth. 1985). Petitioner has identified neither of these with respect to these Counts of the Amended PFR. We therefore find that Petitioner has failed to state a claim upon which relief can be granted, and we sustain DOC's Amended POs and dismiss Counts 21 and 22 of Petitioner's Amended PFR.

## IV. **CONCLUSION**

In light of Petitioner's failure to sufficiently define the factual or legal basis for a legitimate cause of action, we sustain the Amended POs of the Board to

---

[27] Article I, section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and defending property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1.

Counts 11 and 12 of the Amended PFR and the Amended PO of the DA Respondents to Count 13 of the Amended PFR. We also sustain the Amended POs of the DOC Respondents to Counts 1, 4, 5, 6, 7, 8, 9, 10, 17, 21, 22, and 23. For the reasons aforesaid, we overrule the Amended POs for Counts 2, 3, 14, 15, 16, 18, 19, and 20. DOC Respondents shall file a responsive pleading to Counts 2, 3, 14, 15, 16, 18, 19, and 20 of Petitioner's Amended PFR within 20 days from the date of our attached order. Further, we deny Petitioner's Motion to Amend.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan Robins,

           Petitioner

     v.

Secretary Harry, Superintendent Salamon, Supervisor Tice, Supervisor Durst, Mailroom Worker John Doe #1, Search Staff John Doe #2, Pa. Parole Board, D.A. Krasner, and Phila. D.A.'s Office,

           Respondents

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 109 M.D. 2023

## ***ORDER***

AND NOW, this 26th day of August, 2025, the Court hereby SUSTAINS the amended Preliminary Objections of the Pennsylvania Parole Board to Counts 11 and 12 of Jonathan Robins' Amended Petition for Review, sustain the Amended Preliminary Objection of District Attorney Krasner and the Philadelphia District Attorney's Office to Count 13, sustain the Amended Preliminary Objections of Secretary Little, Superintendent Salamon, Supervisor Tice, Supervisor Durst, Mailroom Worker John Doe #1 (DOC Respondents), and Search Staff John Doe #2 to Counts 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 17, 21, 22 and 23, overrule the Preliminary Objections to Counts 2, 3, 14, 15, 16, 18, 19, and 20, and direct DOC Respondents to file a responsive pleading to Counts 2, 3, 14, 15, 16, 18, 19, and 20 of the Amended Petition for Review within 20 days from the date of this order. It is further ordered that Petitioner's Motion to Amend Complaint a Second Time is denied.

                           _____
                           PATRICIA A. McCULLOUGH, Judge